[Civ. No. 7093.  Third Dist.  Feb. 19, 1945.]

W. H. BABER, Respondent, v. COMPTON-DELEVAN IRRI-GATION DISTRICT, Defendant; CHARLES F. LAM-BERT, Intervener and Appellant.

Neal Chalmers and Robert M. Cole for Appellant.

Duard F. Geis, Ware & Ware and Phil Ware for Respondent.

PEEK, J.—The present controversy arose out of a sale of certain lands to plaintiff by defendant Compton-Delevan Irrigation District. From the judgment of the trial court in favor of plaintiff, the intervener-appellant Lambert alone has appealed.

At the time of the sale in question the district was bankrupt. For several years it had been unable to meet either its principal or interest obligations. Its former landowners likewise had failed to meet their assessments and as a consequence the district was compelled to take over all of the acreage within its boundaries. In order to get the land back on the tax rolls the intervener-appellant was engaged as fiscal agent of the district to reorganize and to refinance its obligations. A commitment was obtained from the Reconstruction Finance Corporation but before any monies so committed by that agency could be used it was necessary for the district to dispose of all of the land it then held to private owners. Appellant handled the negotiations for all sales except that of plaintiff, which was arranged solely by his father, W. C. Baber, president of the

board of directors of the district. According to the testimony of appellant, prior to a meeting of the board on August 5, 1941, arrangements or contracts had been made for the sale of all of the lands then held by the district, and at said meeting a resolution was regularly adopted authorizing the issuance of a contract of purchase to plaintiff. The contract so authorized consisted of two typewritten pages, and in effect provided that the district desired to refinance and reorganize its affairs, eliminate outstanding liens, and return the lands to private ownership; that plaintiff, a bondholder of the district, desired to purchase some of the land and agreed to deposit in escrow certain bonds of the district and to buy certain described real property ''. . . at such prices, in no event to exceed $10.00 per acre, and under such terms and conditions as may be hereafter fixed by the Board of Directors, free and clear of all delinquent State and County taxes. . . .'' According to the secretary of the board, in order to conclude all sales of the district held lands, the last meeting was adjourned until August 7, 1941, and during the interim the contract above mentioned was drafted and given to W. C. Baber for the purpose of obtaining the signature of plaintiff. The minutes of the August 7th meeting disclose that ''after due consideration and deliberation, . . . it was resolved and ordered that the following be added to the contracts heretofore authorized to be executed and delivered by the District to W. H. Baber [and all other purchasers] . . . that second party [plaintiff] shall be entitled to first party's [defendant's] share of the 1941 rice crop growing on said premises upon the payment by second party to first party of the charges for furnishing water to said lands during the crop season of 1941.'' The additional provision was set forth on a separate page and attached to plaintiff's contract. The completed instrument, consisting of the three pages which were stapled together, was introduced in evidence and bears the signature of both parties in two places —once on the second page immediately following the portion authorized by the August 5th meeting, and once on the third page immediately following the additional portion authorized by the August 7th meeting. After harvesting, the rice was warehoused in the name of the defendant district, and during the month of January, 1942, pursuant to plaintiff's instructions, his father, W. C. Baber, as chairman of the board, sold

the crop. The check received from the sale thereof was delivered by plaintiff to the secretary of the district. The minutes of the board further disclose that several months thereafter, on June 20, 1942, the board met and pursuant to the August 5th resolution established the grades and prices for lands held by the district. Grade A was to be sold at $10 per acre, Grade B at $6.00 and Grade C at $2.50. The acreage being purchased by plaintiff was classified as Grade A. Soon after this meeting defendant informed plaintiff that the deed to the property was in escrow and the sale ready to be concluded. In response to said letter plaintiff called upon appellant who informed him that the district 'could not credit him with the balance of the proceeds received from the sale of the rice crop over and above the water charges assessed against the land, and that he would have to pay the maximum price per acre as set forth in the contract. Plaintiff thereupon deposited in escrow the total sales price of the land at $10 per acre together with a letter informing the district that by so doing it was not to be considered as a waiver by him of any of the rights he might have to the balance of the proceeds of said rice crop. Shortly thereafter he filed his complaint in two counts, the first, a common count for money had and received, and the second upon the written agreement previously mentioned. Defendant by its answer alleged that the additional matter added to the contract pursuant to the August 7th resolution of the board was an option which had been granted voluntarily, without the knowledge of plaintiff and without consideration, and that the granting thereof constituted a gratuitous transfer of public property in contravention of article VI, section 31 of the Constitution. At the conclusion of the trial of the issues so raised, the court found that the contract was not issued to plaintiff in two parts as contended by defendant but was submitted to him in its entirety as one contract; that said contract had not been executed by plaintiff until after the district had executed the same in its entirety; that the so-called optional portion thereof was not a separate agreement but was a part of the contract as a whole and was an inducement to plaintiff to execute the agreement which he would not have done had it not been added as an original part thereof; that the optional part of the contract was not granted voluntarily by the district or without the knowledge of plaintiff; that the consideration expressed for the purchase of the

land by plaintiff constituted and was consideration for the granting of the right to take the rice crop upon the payment of the water charges; that plaintiff fully exercised his option rights which had not been revoked or rescinded prior thereto by the district. By reason of the foregoing findings the court concluded that the optional portion of the contract was not a gratuitous transfer by the defendant of its property in contravention of the Constitution, and gave judgment accordingly.

The appeal in effect is predicated upon three contentions: (1) That the ultimate result of the judgment of the trial court is to compel a gift of public funds, and therefore is void under article VI, section 31 of the Constitution of this state; (2) that the so-called option agreement is void for lack of consideration and mutuality, and (3) that the judgment would force a sale of trust property for less than its market value.

■ It is readily apparent that if the record discloses sufficient evidence to sustain the findings of the trial court that the first portion of the contract relating to the sale of the land and the portion relating to the 1941 rice crop were but parts of one indivisible contract, then appellant's contentions must fail. In other words, appellant's argument could be valid only if the alleged option had been determined by the trial court to be a separate instrument. Our examination of the record in this regard discloses testimony by plaintiff that he had no intention of buying the land until he was asked if the inclusion of the rice crop, which was being added to all of the other contracts of sale, would be of interest to him; that until such information was conveyed to him at the time the board passed the resolution of August 7th, he had made no commitment relative to the purchase of the land to any person connected with the district; that he understood by the provision in question that he was thereby obligated to pay the water charges; that when he did finally sign the contract there were no separate portions thereof, but that all of the pages were attached together as one contract and that he signed pages two and three on the same date and at the same time after the August 7th meeting of the board.

The testimony of Mr. Laine, secretary of the district at the time the contract was under consideration, related to circumstances surrounding the actual signing of the contract and discussions of the board and appellant concerning the question of

prices. The first portion of his testimony discloses that he did not see plaintiff sign the contract; that when he signed there were no other signatures on the contract; that it was then delivered to plaintiff's father for the purpose of securing plaintiff's signature, and that he saw no signatures on the contract other than his own until sometime after August 7th. The pertinency of the remaining portion of his testimony related to the third issue raised by appellant.

The only other witness who testified concerning the manner of plaintiff's signing and the date thereof, was appellant, who stated that the contract had been executed between August 5th and 7th; that he did not see plaintiff actually sign the contract but that he did see plaintiff's signature prior to the addition of the so-called option set forth on page three thereof (the portion added by the August 7th resolution).

This testimony of appellant, although contrary to that of plaintiff and defendant's secretary did nothing more than present to the trial court a conflict in the evidence only in regard to the time and manner of plaintiff's execution of the contract. From the judgment of the court it is obvious that it chose to accept the testimony in support of plaintiff's case, and found both portions of the agreement to be but one contract and indivisible. If the evidence introduced was sufficient to support said findings, and we conclude that it was, the trial court thereby eliminated from our consideration any question relating to the optional portion as a separate instrument. ▇ It is elementary to add that under such circumstances a reviewing court must resolve all such conflicts in favor of the judgment of the trial court, and accept as true, and in the most favorable light toward the plaintiff, all evidence tending to establish the correctness of the findings in support thereof. (2 Cal.Jur. § 515.)

▇ An examination of the entire record in relation to the final contention of appellant discloses that such question was not placed in issue by the pleadings of either defendant or appellant nor was any direct evidence regarding the same introduced during the course of the trial. However, even if it be considered that said question was directly at issue, substantial support for the conclusion of the trial court is found in the testimony of appellant himself who, in response to a question relating to the reason for ''changing the contract with reference to the 1941 rice crop,'' stated that because the board

had previously provided for the sale of that year's crop to another purchaser for the price of the water, which price the board had established at $6.00 per acre (the price under plaintiff's alleged contract was $7.84 per acre), appellant suggested that all purchasers be allowed the same opportunity; that rice was then selling for "around $1.50 a hundred and the August prospect was not too good, and the Board felt if they could get the return of their water that they would be perfectly satisfied. I agreed with that for the reason in setting up the financing program I was directly concerned in that question because I was taking into consideration the District's assets as well as land sales in connection with all the money that was needed, which was of considerable moment."

In addition to this there is the further testimony of Mr. Laine, who also referred to the time element and the necessity of completing the sales before the escrow agreement expired, and his further testimony concerning a statement of appellant at the August 5th meeting of the board that by allowing land purchasers to take the rice crop upon payment of water charges the district would not lose even if the crop were a failure.

Finally, it may be said that the ultimate selling price of the rice, $3.375 per hundred, cannot be considered as any criterion of the reasonable value of the land or crops at the time the contract was executed. In addition it is quite evident, in view of the previously expressed attitude of both the board and the fiscal agent of defendant district in relation to prices, that the possibility of a war five months thereafter and its skyrocket effect upon the market, were in no way contemplated.

For the foregoing reasons the judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 19, 1945.